**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY *et al.*,<br><br>  Plaintiffs,<br><br>vs.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY *et al.*,<br><br>  Defendants. | Case No.: C-11-06059 YGR<br><br>**ORDER DENYING MOTION OF AMERICAN FOREST & PAPER ASSOCIATION TO INTERVENE** |

Plaintiffs bring this citizens' suit to compel the United States Environmental Protection Agency ("EPA") to review the existing new source performance standards ("NSPS") governing kraft pulp mills. Plaintiffs allege that EPA is required to review the NSPS every eight years to determine whether revision is appropriate but EPA has not conducted a review since 1986. Plaintiffs seek an order compelling EPA to review the standards to determine whether revision is appropriate.

American Forest & Paper Association, Inc. ("AF&PA"), an industry trade group, has filed a Motion to Intervene, Dkt. No. 8, in this action on the grounds that is entitled to intervene as of right because of its substantial interest that may be impaired by the relief Plaintiffs seek and the inability of any party to protect its interests. Alternatively, it requests the Court grant it permissive intervention.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **DENIES** the Motion to Intervene.[1]

**I.   BACKGROUND**

Kraft pulp mills are in the pulp and paper manufacturing sector. Complaint ¶ 2, Dkt. No. 1. The first step in the paper manufacturing process is "pulping"; kraft pulping is the most common

---
[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds that this motion, which has been noticed for hearing on March 20, 2012, is appropriate for decision without oral argument. Accordingly, the Court **VACATES** the hearing set for March 20, 2012.

process. *Id.* ¶ 27. Kraft pulp mills "cook" wood chips down to the raw material from which paper products are made. *Id.* Plaintiffs allege that kraft pulp mills are a significant source of air pollution, but Plaintiffs believe kraft pulp mills have significant potential to reduce emissions. *Id.* ¶¶ 27-29.

Defendant EPA is the federal agency responsible for "protect[ing] and enhanc[ing] the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b). Section 111 of the Clean Air Act ("CAA") requires EPA to publish a list of sources of air pollution and to promulgate performance standards for those sources of pollutants, known as NSPS. EPA has promulgated over 70 NSPS, including those for kraft pulp mills. Once promulgated, EPA "shall, at least every 8 years, review and, if appropriate, revise such standards." 42 U.S.C. § 7411(b)(1)(B). EPA first promulgated kraft pulp mills' NSPS in 1978 but according to the Complaint EPA has not conducted a review since 1986.

Plaintiffs, environmental and recreation groups, whose members are affected by pollution from kraft pulp mills, have sued EPA and its administrator under the citizens' suit provision of the CAA, 42 U.S.C. § 7604. According to the lawsuit, due to EPA's failure to review the kraft pulp mills' NSPS for over 25 years, the current NSPS regulate only two of the many pollutants kraft pulp mills emit, leaving unregulated many pollutants that EPA has determined endanger the public health. Plaintiffs allege that opportunities exist for reducing emissions from these kraft pulp mills and that technological developments during the intervening 25 years make it cost effective to achieve these emission reductions. Plaintiffs seek a declaration that EPA's failure to review the NSPS for kraft pulp mills to determine whether a revision is appropriate constitutes unreasonable delay and Plaintiffs seek an order compelling EPA to conduct such a review and make a determination of whether to revise the NSPS. The suit brings two claims: (1) failure to review kraft pulp mills' NSPS; and (2) failure to determine whether to revise kraft pulp mills' NSPS.

Would-be intervenor AF&PA is a national trade association of the forest products industry, whose members include owners and operators of kraft pulp mills. AF&PA represents the interests of its members before EPA and in the courts to assure that the obligations imposed on its members by environmental laws and regulations are achievable, appropriate, and necessary to meet environmental and health protection goals and do not impose excessive costs or burdens.

## II. LEGAL STANDARD

Intervention is a procedure by which a nonparty can gain party status without the consent of the original parties. *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 129 S.Ct. 2230, 2234 (2009) ("intervention is the requisite method for a nonparty to become a party to a lawsuit") (discussing government's right to intervene under false claims act). There are two types of intervention: intervention of right and permissive intervention. Intervention is a matter of right when a federal statute confers the right to intervene or the applicant has a legally protected interest that may be impaired by disposition of the pending action and that interest is not adequately represented by existing parties. Fed. R. Civ. P. 24(a). Permissive intervention may be allowed at a court's discretion when a federal statute confers a conditional right to intervene, or the applicant's claim or defense and the main action share a common question of law or fact. Fed. R. Civ. P. 24(b).

## III. DISCUSSION

AF&PA seeks intervention, both as a matter of right and permissively under subdivisions (a) and (b) of Federal Rule of Civil Procedure 24. Plaintiffs oppose intervention. EPA takes no position on whether the motion to intervene should be granted.

### A. INTERVENTION OF RIGHT

Courts in the Ninth Circuit apply a four-part test to determine whether intervention is a matter of right: (1) the applicant must assert a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (2) disposition of the action without intervention may as a practical matter impair or impede its ability to protect that interest; (3) the applicant's interest must be inadequately represented by the parties to the action; and (4) the applicant's motion must be timely. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). The applicant bears the burden of establishing all of the criteria, but the rule is construed "broadly, in favor of the applicant for intervention." *Id.* Timeliness is undisputed so the Court will address only the first three parts of the test.

#### 1. *"Significantly protectable" interest*

To determine whether an applicant has a "significantly protectable" interest necessary for intervention, the Court must consider (a) whether the interest is protectable under some law, and

(b) whether there is a relationship between the legally protected interest and the claims at issue. *Wilderness Soc. v. United States Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011). A would-be intervenor will generally demonstrate it "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." *United States v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995) (cited in *United States v. Aerojet General Corp.*, 606 F.3d 1142, 1150 (9th Cir. 2010)). When "the injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, that party satisfies the 'interest' test." *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1494 (9th Cir. 1995) *abrogated by Wilderness Soc.*, *supra*, 630 F.3d 1173.

      a)  <u>AF&PA's "interests" in this litigation</u>

AF&PA argues that it has both procedural and economic interests in this litigation. First, AF&PA and its members have an interest in the rulemaking process; this includes whether EPA reviews kraft pulp mills' NSPS and, if so, "the timing of such a review." Motion 7. AF&PA and its members have participated in the rulemaking process in the past and will do so in the future. AF&PA asserts that this interest is protected by the CAA provisions that set forth procedures for EPA rulemaking, including public participation. The second interest is AF&PA's members' economic interest in not being subjected to more stringent regulations.[2] AF&PA's members are the regulated industry and Plaintiffs' success in this suit ultimately could lead to more stringent regulations for kraft pulp mills.

\\

\\

---

[2] In a declaration attached to its reply, AF&PA raises for the first time that it is economically burdened by the review process itself because its members will need to comply with EPA information collection requests ("ICR"). The declarant states that a cost estimate for a previous ICR was 127,906 hours and $12,100,453. Supplemental Declaration of Timothy G. Hunt, Dkt. No. 20, Ex. 1, ¶ 5. Although not technically raised in the reply brief – it is mentioned in the declaration attached to the reply – AF&PA should have raised this argument in its motion. As a consequence, AF&PA did not apply the four-part test to this purported interest. Because the burden is on the entity seeking intervention to establish that it is entitled to intervene, the Court declines to apply the test for AF&PA.

4

b) <u>The relationship between AF&PA's "interests" and the claims at issue</u>

Before determining whether AF&PA's interests are related to the claims at issue in this litigation, the Court first will summarize those claims. The scope of the litigation here is narrow: did EPA abide by the statutory review requirements? If EPA followed the statutory requirements, then ostensibly, the NSPS for kraft pulp mills will remain the same. If not, then EPA, not the Court, will review the regulations to determine whether revision is appropriate. The question for the Court to decide here, however, is not whether EPA has failed to comply with a statutory duty, but whether AF&PA should be permitted to intervene to present its opposition to Plaintiffs' claim.

*(1) No relationship between procedural interest and claims at issue*

AF&PA's first interest – ensuring that in any future rulemakings, EPA will have sufficient time to collect and analyze relevant scientific data and that AF&PA will have sufficient time to obtain and analyze that data to comment upon proposed revisions – is insufficient to provide for intervention as a matter of right. AF&PA has not shown that the disposition of this action will impair its procedural interest in the rulemaking notice and comment process. It has taken full advantage of its right to participate in administrative proceedings in the past, and its role in any future administrative process is not in jeopardy. On the one hand, if Plaintiffs lose, then there likely will not be any rulemaking notice and comment process. On the other hand, if Plaintiffs prevail, then AF&PA likely will participate in any notice and comment process. In either event, AF&PA's procedural interest in the administrative proceeding is preserved.

AF&PA asserts that "*Sierra Club v. United States Environmental Protection Agency*, 995 F.2d 1478 (9th Cir. 1993),[3] is particularly analogous to the instant case." Motion 11. The Court disagrees. There, Sierra Club sought to have EPA promulgate water quality standards for pollution discharge permits EPA already had issued to the City of Phoenix. The City of Phoenix had already acquired enforceable rights in water discharge permits from EPA, which "[i]n practical terms, the Sierra Club wanted the court to order the EPA to change." *Sierra* Club, 995 F.2d at 1481. The Ninth Circuit held the City of Phoenix had a right to intervene because its discharge permits, obtained pursuant to the Clean Water Act, created a legally protectable interest related to the subject of the litigation. Here,

---

[3] Abrogated by *Wilderness Soc.*, *supra*, 630 F.3d 1173.

1  AF&PA's members do not have pollution discharge permits, which Plaintiffs want to change; nor do
2  Plaintiffs want this Court to order EPA to change the regulations which might affect AF&PA's
3  members' rights to discharge pollutants.

4  AF&PA also relies on *Idaho Farm Bureau Federation v. Babbit*, 58 F.3d 1392 (9th Cir. 1995)
5  to argue that its past participation in the rulemaking process creates a legally protectable interest in
6  this litigation. The Ninth Circuit, affirming the District Court's grant of intervention to public interest
7  groups in a lawsuit that challenged the administrative process that led to listing the Springs Snail on
8  the endangered species list, stated "[a] public interest group is entitled as a matter of right to intervene
9  in an action challenging the legality of a measure it has supported." *Id.* at 1397. However, the public
10 interest groups in *Babbit* not only participated in the process the agency went through to list the
11 Spring Snail as endangered, but the public interest groups, in fact, had to file a lawsuit to compel the
12 agency to make a final decision on the proposed listing. Additionally, the public interest groups'
13 interest in the lawsuit was not just procedural (*i.e.*, whether the agency followed proper procedures in
14 listing the Springs Snail) but substantive as the outcome of that litigation was to delist the Spring
15 Snail. *Id*. 1398. Thus, *Babbit* also does not advance AF&PA's position.

16 The Court understands AF&PA's concern that without its participation in this action, any
17 schedule ordered by this Court may not provide adequate time for AF&PA and its members to fully
18 participate in this process. However, there is not a "relationship" between AF&PA's legally protected
19 interest and the Plaintiffs' claims. Moreover, precisely because the CAA substantively protects this
20 procedural interest, if EPA does not comply with the statutory procedures and AF&PA's interests are
21 harmed, then it may file suit. In the meantime, this interest is "undifferentiated" from the interests of
22 the other participants in the notice and comment proceedings. Thus, AF&PA's procedural interest is
23 not a "significant" interest that provides for intervention as a matter of right in this litigation.

24 *(2)   No relationship between economic interest and claims at issue*
25 Likewise, the proffered economic interest is remote. In this action,
26 Plaintiffs seek an order compelling EPA to review the existing NSPS to determine whether the NSPS
27 must be revised; and if so, an order setting a timetable for when EPA should carry out the process.
28 AF&PA is by all means content with the *status quo*, and likely would rather avoid even the possibility

6

of more stringent regulations by avoiding a review of the existing NSPS.  However, the possibility[4] that this lawsuit could lead to more stringent regulations does not constitute a direct, substantial, legally protectable interest in this lawsuit.  Plaintiffs do not seek to compel EPA to modify the existing regulations, only to review of those regulations.  Thus, even if Plaintiffs are successful in this lawsuit, the existing NSPS may remain the same.  Accordingly, the possibility that this lawsuit could lead to a process that may change those regulations creates, at best, a remote economic interest in this litigation.  A remote interest does not provide for intervention as a matter of right.[5]

### 2. *Impairment of interest*

Once an applicant for intervention has shown that it has a sufficient interest in the litigation, the applicant next must show its interest may be impaired.  Even assuming *arguendo* that AF&PA's procedural interest in the rulemaking notice and comment process is sufficient, it still fails to demonstrate that the disposition of this action will impair that interest.  AF&PA has moved to intervene because resolution of this case could involve a plan and schedule for rulemaking that does not allow sufficient time for EPA to collect and analyze necessary data, or for AF&PA to obtain and analyze data needed to comment upon proposed revisions to the regulations.  If EPA should determine revision to the existing NSPS is appropriate then AF&PA will have an opportunity to protect its interests in any notice and comment proceeding.  If EPA does not comply with the statutory procedures and AF&PA's interests are harmed, then it may file suit.  In any event, AF&PA has not shown that disposition of this case may impair its procedural interest in the administrative proceedings.

### 3. *Inadequacy of representation by the existing parties*

The final factor is whether the existing parties will represent the applicant's interests in the litigation adequately.  A would-be intervenor is adequately represented if another party will make its arguments, the present party is capable and willing to make such arguments, and the would-be intervenor would not offer any necessary element to the proceedings that the other parties would

---

[4] The causal link is as follows: if Plaintiffs are successful in this lawsuit, the Court will order EPA to review the existing kraft pulp mills' NSPS, EPA may determine that revision is appropriate, then after public participation in a notice and comment period, EPA may revise the regulations, which may affect AF&PA's members' economic interests.

[5] Because this interest is so remote, the Court finds that it is unnecessary to continue to analyze whether this interest will be impaired through resolution of this lawsuit; or whether an existing party will represent this interest adequately.

neglect. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir.), *cert. denied sub nom. Hoohuli v. Lingle*, 540 U.S. 1017 (2003). This burden on the would-be intervenor is minimal as it merely needs to show that representation of the interest by existing parties *may* be inadequate. *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002).

AF&PA explains that the missions of its members differ from those of the existing parties to this litigation,[6] but it has not shown that any of the existing parties may not represent AF&PA's interest in this litigation adequately. AF&PA's interest in this litigation is to ensure that any schedule for review provides ample time for AF&PA (and its members) to participate. Any other interests it believes that EPA or Plaintiffs may not represent adequately are not at issue in this litigation. For example, AF&PA's concern that "EPA may not be inclined to resist a court order requiring it to regulate" is not germane to the case. Motion 15.

AF&PA argues that EPA may not pursue jurisdictional arguments or unspecified merits arguments.[7] *See id.* This argument rings hollow. AF&PA has filed a proposed answer, which raises certain defenses but does not seek to dismiss the lawsuit. Additionally, because AF&PA does not specify what merits arguments it believes EPA will not make, the Court cannot assess whether EPA may neglect those arguments.

The only argument AF&PA advances related to inadequacy of representation of its interests focuses on the speed of the review. In essence, Plaintiffs' interests in expeditious review diverge from AF&PA's interests in advocating for adequate time for EPA's review. AF&PA argues that EPA may enter into a consent decree and schedule for review that does not provide ample time for AF&PA's participation. In support, AF&PA cites *Sierra Club v. Jackson*, No. 09-00152-SBA (N.D. Cal.), as an example where EPA "was willing to agree last year to a remedy that provided AF&PA inadequate time to participate in that regulatory review process." However, the facts of that case do not support AF&PA's argument. AF&PA intervened in *Sierra Club v. Jackson* (Sierra Club filed a

---

[6] "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki*, *supra*, 324 F.3d at 1086. Simply showing that AF&PA's interests are not identical to EPA's interests does not demonstrate inadequate representation.

[7] AF&PA believes that EPA's review of kraft pulp mill NSPS is discretionary not mandatory. Reply 3. AF&PA also argues that it is not clear that EPA has not reviewed kraft pulp mill NSPS since 1986. *Id.* However, AF&PA has not argued that EPA will not make these arguments or that AF&PA will offer some necessary element that EPA would otherwise neglect with respect to either argument.

statement of non-opposition) and through a modified consent decree, AF&PA agreed to the deadlines that it now considers to be severely constraining.  Again, if EPA does not comply with the rulemaking procedures, then AF&PA can file suit to compel it to comply with those procedures.  AF&PA has not shown that it has a right to intervene in this action.  Accordingly, its motion to intervene as a matter of right is **DENIED**.

### B.     PERMISSIVE INTERVENTION

Three necessary prerequisites must exist to allow permissive intervention pursuant to Rule 24(b)(2): (1) the applicant's claim or defense must share a common question of law or fact with the main action; (2) there must be independent grounds for jurisdiction over the claim or defense; and (3) timeliness.  *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997); Fed. R. Civ. P. 24(b).  Even where all the prerequisites are met, a district court has considerable discretion in ruling on the motion for permissive intervention.  *In re Benny*, 791 F.2d 712, 721-22 (9th Cir. 1986); *E.E.O.C. v. National Children's Ctr., Inc.*, 146 F.3d 1042, 1048 (D.C. Cir. 1998) ("Reversal of a district court's denial of permissive intervention is a 'very rare bird indeed.'").  "In exercising its discretion the court shall consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  Fed. R. Civ. P. 24(b).  There is no dispute over timeliness, so the Court will address only the first two factors.

*1.     Whether the claims and defenses share a common question of law or fact*

The first prerequisite requires that the applicant's claim or defense share a common question of law or fact with the main action.  If the would-be intervenor's claim or defense contains no question of law or fact also raised by the main action, then intervention under Rule 24(b)(2) must be denied.  AF&PA has failed to identify any claim or defense that shares a common question of law or fact with the main action.

To assist the Court in this inquiry, Rule 24(c) requires that the entity seeking to intervene file a motion "accompanied by a pleading that sets out the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24(c).  AF&PA attaches a proposed answer to its motion, which asserts no new claim but raises three defenses:  the Plaintiffs lack standing; the Court lacks subject matter jurisdiction; the Complaint fails to state a claim upon which relief can be granted.  Nevertheless,

AF&PA asserts that its "claims and defenses are contrary to, but involving interpretation of the same statutory authority as, Plaintiffs' claims. Consequently, there are numerous common issues of fact and law involved in both Plaintiffs' Complaint and the defenses and claims that intervenor-applicant AF&PA will assert in this case." Motion 18. Other than the three generic defenses in its proposed answer, it has not identified any claim or defense for which intervention is sought. Thus, AF&PA argues – but it has not shown – that its defenses share a common question of law or fact with the main action.

To the extent that AF&PA seeks to litigate the issue of whether EPA has complied with its duties under the CAA, EPA is in a better position to raise arguments about its own compliance. *See Our Children's Earth Foundation et al. v United States Environmental Protection Association et al.*, No. 05-00094-CW, Dkt. No. 26, at *13 (N.D. Cal. May 4, 2005). If that is the basis for which intervention is sought, the Court does not find AF&PA's proffer for intervention compelling.

### 2. *Whether there are independent grounds for jurisdiction*

An applicant that seeks permissive intervention also must establish that there is an independent basis for jurisdiction. *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996). AF&PA asserts that "[t]o the extent it has jurisdiction over Plaintiffs' claims, this Court has independent jurisdiction as well over AF&PA's claims and defenses, because they both relate to EPA's alleged failure to complete non-discretionary duties under the Clean Air Act." Motion 18. While the asserted basis for jurisdiction over the main action is clear, AF&PA has not identified any defense over which there is an independent basis for jurisdiction.

For the reasons set forth above, the Court **DECLINES TO GRANT** permissive intervention.

## IV. CONCLUSION

For the reasons stated above, the Motion to Intervene is **DENIED**.

This Order Terminates Docket Number 8.

**IT IS SO ORDERED.**

Date: March 16, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**